UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN FEDERATED TITLE CORPORATION,
a Florida corporation,

Case No.13 Civ 06437(AJN)

Plaintiff,

- against -

GFI MANAGEMENT SERVICES, INC., a New York
corporation, ALLEN I. GROSS, an individual, and
EDITH GROSS, an individual,

Defendants.

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANTS'
# MOTION TO DISMISS COUNT I OF THE AMENDED COMPLAINT

**STAHL & ZELMANOVITZ**
*Attorneys for Defendants*
*GFI Management Services, Inc.,*
*Allen I. Gross, and Edith Gross*
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL ALLEGATIONS OF COUNT I OF THE COMPLAINT ...........................................3

ARGUMENT ........................................................................................................................7

I.      THE LEGAL STANDARD FOR THE MOTION ............................................................7

II.     THERE IS NO SEPARATE CAUSE OF ACTION
        TO PIERCE THE CORPORATE VEIL..........................................................................8

III.    IN ANY EVENT THE CLAM IS PRECLUDED
        BY THE DOCTRINE OF RES JUDICATA ..................................................................10

IV.     COUNT I SHOULD BE DISMISSED
        BECAUSE THE CORPORATE VEIL MAY NOT BE
        PEIRCED ABSENT FRAUD OR WRONG
        WHICH HAS NOT BEEN PROPERLY PLED .............................................................14

        A.      Absence of Fraud or Wrong.............................................................................14

        B.      The Complaint Fails to Particularize Allegations of Fraud or Wrong .................18

CONCLUSION....................................................................................................................19

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

## <u>AUTHORITIES</u>

*Alex. Brown & Sons v. Marine Midland Banks,*
    1997 U.S. Dist. LEXIS 2342 (S.D.N.Y. Mar. 4, 1997) ..............................................1 (n1)

*American Protein Corp. v. AB Volvo,*
    844 F.2d 56 (2d Cir. 1988)................................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937 (U.S. 2009)...................................................7 - 8

*Bank of N.Y. v. First Millennium, Inc.,*
    607 F.3d 905 (2d Cir. 2010) ...................................................................11 - 12

*Barnum v. Millbrook Care Ltd. P'ship,*
    850 F. Supp. 1227 (S.D.N.Y. 1994) ...................................................................8

*Bartle v. Home Owners Cooperative, Inc.,*
    309 N.Y. 103 (1955) ........................................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (U.S. 2007)........................................................6

*Boczar v. Greene,*
    2008 NY Slip Op 30138(U),
    2008 N.Y. Misc. LEXIS 8250 (Sup. Ct., N.Y. Co., 2008) ...........................9-10, 12 - 13

*Bonacasa Realty Co., LLC v. Salvatore,*
    109 A.D.3d 946, 972 N.Y.S.2d 84 (2d Dep't 2013)...................................15 - 16

*Broadridge Secs. Processing Solutions, LLC v. Khashoggi,*
    507 Fed. Appx. 57 (2d Cir. 2013) ...................................................................15

*Burberry Ltd. v. Horowitz,*
    534 Fed. Appx. 41 (2d Cir. 2013) ...................................................................12

*Carruthers v. Flaum,*
    365 F. Supp. 2d 448 (S.D.N.Y. 2005)...............................................................9

*Dance Magic, Inc. v. Pike Realty, Inc.,*
    85 A.D.3d 1083, 926 N.Y.S.2d 588 (2d Dep't 2011)...................................4 (n2)

*Day v. Moscow,*
  955 F.2d 807 (2d Cir.1992)........................................................................8

*DiBella v. Hopkins,*
  403 F.3d 102 (2d Cir. 2005) ...............................................................(9 n3)

*Flushing Plaza Assoc. #2 v. Albert,*
  102 A.D.3d 737, 958 N.Y.S.2d 713 (2d Dep't 2013)........................................15

*H & R Project Assocs. v. City of Syracuse,*
  289 A.D.2d 967, 737 N.Y.S.2d 712 (4th Dep't 2001) .....................................9

*Hart v. Jassem,*
  43 A.D.3d 997, 843 N.Y.S.2d 121 (2d Dep't 2007)........................................9

*In re Currency Conversion Fee Antitrust Litigation,*
  265 F. Supp. 2d 385 (S.D.N.Y. 2003).......................................................18

*In re Gen. Growth Props.,*
  409 B.R. 43 (Bankr. S.D.N.Y. 2009) .................................................16 (n6)

*James v. Loran Realty V Corp.,*
  20 N.Y.3d 918, 956 N.Y.S.2d 482 (2012) .....................................................14

*Kassner v. 2nd Ave. Delicatessen Inc.,*
  496 F.3d 229 (2d Cir. 2007).......................................................................8

*Leptha Enters., Inc. v. Longenback,*
  1991 U.S. Dist. LEXIS 12625,
  1991 WL 183373 (S.D.N.Y. Sept. 9, 1991).................................................13

*Magnuson v. Newman,*
  2013 U.S. Dist. LEXIS 138595 (S.D.N.Y. Sept. 25, 2013)..............................15

*Matter of Moak,*
  92 A.D.3d 1040, 938 N.Y.S.2d 648 (3d Dep't 2012)......................................9

*Matter of People of the State of New York, by Eliot Spitzer, as Attorney Gen.*
  *v. Applied Card Sys., Inc.,*
  11 N.Y.3d 105, 124-125 (2008).................................................................10

*Morris v. N.Y.S. Dep't of Taxation & Fin.,*
  82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993) .....................................2, 8, 14 - 17

*Murray v. Miner,*
  74 F.3d 402 (2d Cir. 1996)...........................................................................15

*Nasca v. DelMonte,*
  111 A.D.3d 1427, 975 N.Y.S.2d 317 (4th Dep't 2013) ....................................14

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC,*
  537 F.3d 168 (2d Cir. 2008)...........................................................................16

*Olympic Tower Assocs. v. New York,*
  81 N.Y.2d 961 (1993) ....................................................................................10

*Robinson v. Day,*
  103 A.D.3d 584, 960 N.Y.S.2d 397 (1st Dep't 2013) .........................................9

*Rosen v. Kessler,*
  51 A.D.3d 761, 856 N.Y.S.2d 861 (2d Dep't 2008) .....................................9, 13

*Rothman v. Gregor,*
  220 F.3d 81 (2d Cir. 2000)...............................................................................8

*Schulz v. Williams,*
  44 F.3d 48 (2d Cir. 1994).................................................................................13

*Stewart Tenants Corp. v. Square Indus., Inc.,*
  269 A.D.2d 246, 703 N.Y.S.2d 453 (1st Dep't 2000) .......................................13

*Sugar Foods De Mexico v. Scientific Scents, LLC,*
  79 A.D.3d 1551, 914 N.Y.S.2d 352 (3d Dep't 2010) .........................................9

*Taberna Capital Mgmt., LLC v. Dunmore,*
  2009 U.S. Dist. LEXIS 79811 (S.D.N.Y. Sept. 1, 2009)....................................9

*TNS Holdings Inc. v. MKI Sec. Corp.,*
  92 N.Y.2d 335, 680 N.Y.S.2d 891 (1998) .......................................................14

*TufAmerica, Inc. v. Diamond,*
  2013 U.S. Dist. LEXIS 129128 (S.D.N.Y., Sept. 10, 2013)...............................8

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
  216 F. Supp. 2d 198 (S.D.N.Y. 2002)..............................................................18

*Walkovszky v. Carlton,*
  18 N.Y.2d 414, 276 N.Y.S.2d 585 (1966) ...................................................3, 17

*Wexner v. First Manhattan Co.,*
    902 F.2d 169 (2d Cir. 1990) ..................................................................................18

*9 E. 38th St. Assocs. L. P. v. George Feher Assocs.,*
    226 A.D.2d 167, 640 N.Y.S.2d 520 (1st Dep't 1996) ...........................................9

## STATUTES AND RULES

Federal Rules of Civil Procedure 8(a)(2) ........................................................................18

Federal Rules of Civil Procedure 9(b) .............................................................1, 3, 18, 19

Federal Rules of Civil Procedure 12(b)(6) ...........................................................1, 7, 8, 19

## TREATISES AND SECONDARY SOURCES

The Law of Real Estate Financing, § 13:38 (2008) ....................................................16 (n6)

Special-Purpose Entities and Authority to File Bankruptcy,
23-2 Am. Bankr. Inst. J. 36 (March 2004) ...............................................................16 (n6)

Standard and Poor's, Legal Criteria for Structured Finance Transactions (April 2002) ..................16 (n6)

Defendants GFI Management Services, Inc., Allen I. Gross, and Edith Gross ("collectively, defendants") respectfully submit this memorandum of law in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), to dismiss Count I of the Amended Complaint ("Complaint") of American Federal Title Corporation ("AFTC" or "plaintiff"), for failure to state a claim upon which relief may be granted and for the failure to plead fraud with particularity.

## PRELIMINARY STATEMENT

The Amended Complaint, dated December 27, 2013, contains four counts. This motion seeks to dismiss the first count, which is denominated by plaintiff as "Alter Ego/Piercing the Corporate Veil." The remaining three counts assert variations of fraudulent conveyance causes of action, pursuant to state law, and are not the subject of this motion.[1]

Plaintiff's Complaint essentially alleges that, because the defendants allegedly formed limited purpose entities in order to shield themselves from liability, this Court should pierce the corporate veil. The Complaint asserts that this relief is chiefly warranted because plaintiff's attempt to execute on their $7.5 million breach of contract judgment has had no success.

Plaintiff errs in assuming that such a basis supports a claim for piercing of the corporate veil.

First, under New York law there is no independent cause of action for piercing the corporate veil or alter ego. It is simply a factual analysis applied to an actionable

---

[1] The time for a defendant to answer the complaint is tolled when the defendant moves to dismiss fewer than all causes of action of the complaint. *See generally Alex. Brown & Sons v. Marine Midland Banks,* 1997 U.S. Dist. LEXIS 2342, 17-19 (S.D.N.Y. Mar. 4, 1997).

complaint. Moreover, Count I is also barred by principles of res judicata because even that alleged factual application with regard to piercing the veil should have been made in the previous action in which those companies were parties, and which formed the basis of the judgment dated October 28, 2010 (attached to the Complaint).

Second, it is well settled that only in extraordinary cases should the corporate form be pierced. Plaintiff's inability to collect on its judgment for a breach of contract is, on its own, an insufficient basis to pierce the veil, or else there would be little purpose in obtaining the protection of the corporate form in the first instance.

Third, to pierce the veil under New York law, the Court must find that the pleadings plausibly support allegations that (1) the defendants exercised complete domination of the corporation in respect to the transaction attacked; and, more importantly in this case, (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. Importantly, in this case, where the parties were engaged in business for many years without incident, and where plaintiff received millions of dollars in revenue from defendants, plaintiff cannot demonstrate that the entities were set up as a sham with the intention to breach *future* contracts with plaintiff. Here, as the Court of Appeals for the State of New York has stated in the seminal decision of *Morris v. State Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 145, 603 N.Y.S.2d 807 (1993), "[t]here is no showing that [the corporate entity] was *set up* as a sham or for the purpose of tax avoidance." (Emphasis added).

The Complaint does not allege any facts, in a non-conclusory fashion, that support the plausible conclusion that any alleged domination (which defendants dispute in any event) was used to commit a fraud or wrong against plaintiff and which resulted in

plaintiff's injury. Both the lack of fraud and wrong, and the lack of causation to plaintiff's injury, are fatal to its claim. This is especially true with regard to the individual defendants. Additionally, the Complaint never pleads that the individual defendants used the corporate entities for their own personal interests rather than the corporations' business. The entire Complaint truly rests on the allegation that all of the affiliated businesses were really one giant organization, which does not create personal liability against the individual defendants. *Walkovszky v. Carlton,* 18 N.Y.2d 414, 417, 276 N.Y.S.2d 585 (1966) ("[I]t is one thing to assert that a corporation is a fragment of a larger corporate combine which actually conducts the business . . .  It is quite another to claim that the corporation is a "dummy" for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends. In the first, only a larger corporate entity would be held financially responsible . . . while, in the other, the stockholder would be personally liable.").

Finally, under Federal Rules of Civil Procedure 9(b), any allegations of fraud or wrong should have been pled with particularity. It was not. Not even a liberal reading of the Complaint can resuscitate Count I of plaintiff's Complaint.

Count I of the Complaint should, therefore, be dismissed with prejudice.

## FACTUAL ALLEGATIONS OF COUNT I OF THE COMPLAINT

Defendants do not admit any of the substantive contentions contained in the Complaint. However, we summarize the relevant allegations of the Amended Complaint for the Court's reference in adjudicating this motion.

The Complaint alleges that in the summer of 2000 -- ten years before the judgment at issue -- properties located throughout the State of Florida were leased to Mr.

and Mrs. Gross by AFTC, through various entities established by the Grosses and known as A & M Florida Properties, LLC, A & M Florida Properties II, LLC, and A & M Florida Properties III, LLC (collectively, the "A & M Entities"). Compl. at ¶ 13.  The Complaint alleges that the A & M Entities were created for the sole purpose of acting as the lessees under the long-term leases with AFTC, and have never been a party to any business dealings that were not associated with their leases with AFTC. Compl. at ¶ 14. The Complaint alleges that Mr. and Mrs. Gross had used the same system of organizing single-purpose, no-asset corporate entities to lease or own 50 - 60 properties throughout the country, Compl. at ¶ 15, -- as if there is anything wrong with that, a typical real estate leasing structure. Mr. and Mrs. Gross are the sole owners of the A & M Entities. Compl. at ¶ 16. Mr. and Mrs. Gross contributed their own personal funds to pay for the $2,600,000.00 in security deposits for ground leases, on behalf of the A & M Entities. Compl. at ¶¶ 17 - 18.  The Complaint alleges that after the ground leases were executed, defendants took control of the Properties and began running the apartment complexes through GFI Management. Compl. at ¶ 19. GFI Management was responsible for the operation of every aspect of the A & M Entities' existence, including, performance of all of the administrative services of the A & M Entities, which included, accounting, bookkeeping, record keeping, payroll and staffing, obtaining insurance, purchasing supplies for the Properties, tenant relations, account management and advertising. Compl. at ¶ 19.[2]  The Properties generated millions of dollars in annual revenue. Compl. at ¶ 20.

---

[2] This is no different than a typical real estate business. The property is owned by a corporate entity and a separate management company handles all aspects of its operation, such as rent collection, payment of the mortgage, insurance, repairs, maintenance, etc. *See, e.g., Dance Magic, Inc. v. Pike Realty, Inc.,* 85 A.D.3d 1083, 926 N.Y.S.2d 588 (2d Dep't 2011) ("In mid-2005, the defendant Pike Plaza Associates, LLC (hereinafter Plaza), acquired the subject building and landlord rights from Realty. The defendant Prime Locations, Inc. (hereinafter Locations), a real

Defendants ran the leases without incident for approximately seven (7) years after the first of the ground leases was executed (and rents were paid to plaintiff in the millions of dollars). Mr. Gross then expressed to AFTC that he wanted to purchase all four of the Properties. Compl. at ¶¶ 21, 24. In April, 2007, Mr. Gross, allegedly as sole owner, created GFI Acquisition, LLC ("GFI Acquisition") for the purpose of acting as the party that would ultimately purchase the Properties from AFTC. Compl. at ¶ 22.

On July 3, 2007, AFTC entered into a Purchase and Sale Agreement with GFI Acquisition (the "PSA"), pursuant to which AFTC agreed to sell the Properties to GFI Acquisition for the sum of $41,457,647.46. Ultimately, AFTC's sale of the Properties did not close and there resulted a series of lawsuits filed between AFTC and GFI Acquisition and the A & M Entities related to the ground leases and the PSA. Compl. at ¶¶ 23, 27- 31.

While litigating the claims and counterclaims in Florida state court, A & M and A & M II filed for Chapter 11 protection in the United States Bankruptcy Court for the Southern District of New York. One of the claims transferred to the Bankruptcy Court was the affirmative action instituted by GFI Acquisition seeking to hold AFTC liable for its breach of the PSA. Compl. at ¶ 29 - 31. AFTC asserted claims against the A & M Entities to recover the unpaid rent owed under the ground leases and a claim against GFI Acquisition for breaching the PSA. Compl. at ¶31.

On or about October 20, 2010, AFTC, GFI Acquisition and the A & M Entities entered into a Settlement Stipulation in the Bankruptcy Actions to resolve AFTC's affirmative claims against the A & M Entities and GFI Acquisition. Compl. at ¶31. As a result, on October 28, 2010, the Bankruptcy Court, on consent, entered an Order and

---

estate management company, was responsible for the daily operations of the subject building and acted as an agent for Plaza.").

Judgment in favor of AFTC against the A & M Entities in the amount of $7,000,000.00, and against GFI Acquisition in the amount of $500,000.00.  Compl. at ¶¶ 33 - 34.

The Complaint alleges that the entire network of entities created and owned by the Grosses is really a giant real estate organization with many levels made up of single purpose entities. Compl. at ¶¶ 43 - 47.

The Complaint alleges that the Final Judgment against the A & M Entities and GFI Acquisition remains unsatisfied, with no portion of the Final Judgment ever having been paid by the A & M Entities or GFI Acquisition. Compl. at ¶ 48.

The Complaint further alleges that defendants have completely dominated and controlled the A & M Entities and GFI Acquisition so that these entities have no separate existence apart from defendants. Compl. at ¶ 105. The Complaint alleges that defendants have used their domination over the A & M Entities and GFI Acquisition to perpetrate a wrongful and unjust act against AFTC by preventing AFTC from collecting on the Final Judgment that was stipulated and agreed to by the A & M Entities and GFI Acquisition, Compl. at ¶¶ 106 - 107, and that the Defendants have exercised total control and dominion over the A & M Entities and GFI Acquisition to act as the true prime movers behind the scenes and strip these entities of their assets for the improper purpose of avoiding liability under the Final Judgment. Compl. at ¶ 4. It is not alleged, however, nor could it be alleged, that the A & M Entities were established in the early 2000's -- years before the Judgment -- to defraud plaintiff. After all, plaintiff cannot dispute that millions of dollars in rental revenue were paid to plaintiff over many years since the formation of the A & M Entities.

In attempting to support its conclusion that defendants dominated the A & M Entities and GFI Acquisition, the Complaint alleges: (1) that the A & M Entities were inadequately capitalized and lacked funding, Compl. at ¶¶ 53 - 57 (although the Complaint acknowledges that $2.6 million in funding was provided to pay for security deposits, *id.* ¶¶ 17 - 18, and the Complaint does not deny that millions of dollars were paid to plaintiff over the years); (2) that the companies engaged in intercompany transfers allegedly without consideration, and funds were allegedly co-mingled, Compl. at ¶¶ 58 - 71; (3) that the entities allegedly lack independent business discretion, *id.* at ¶¶ 72 - 82; (4) that their relationship was not arm's length, *id.* at ¶¶ 83 - 90; (5) that they lacked corporate formalities, *id.* at ¶¶ 91- 93; (6) that they shared space and facilities, *id.* at ¶¶ 94 - 96; (7) that single purpose entities were created, *id.* at ¶¶ 97 - 99; and, (8) that the officers, directors and personnel overlapped, *id.* at ¶¶ 100 - 104.

While defendants dispute the allegations in general, they need not do so for purposes of having Count I of the Complaint dismissed as a matter of law, for the reasons set forth below.

## ARGUMENT

## I.

## THE LEGAL STANDARD FOR THE MOTION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (U.S. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955 (U.S. 2007)).

A claim has facial plausibility only if "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, the court will accept the plaintiff's allegations as true but need not accept allegations that are merely conclusions of law. *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond,* 2013 U.S. Dist. LEXIS 129128 (S.D.N.Y., Sept. 10, 2013) (quoting *Barnum v. Millbrook Care Ltd. P'ship,* 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)). Additionally, it is well settled that a court may take judicial notice of other court records as a matter of public record. *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir. 2000).

Normally, res judicata is an affirmative defense to be pleaded in the defendant's answer. However, "when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992).

## II.

## THERE IS NO SEPARATE CAUSE OF ACTION
## TO PIERCE THE CORPORATE VEIL

All four New York State Appellate Departments uniformly hold, based on the seminal New York Court of Appeals decision of *Morris v. State Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993), that New York does not recognize a separate

cause of action to pierce the corporate veil.[3] *First Department*: *Robinson v. Day*, 103 A.D.3d 584, 588, 960 N.Y.S.2d 397 (1st Dep't 2013) ("The thirty-fourth cause of action is dismissed because 'an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation.'"); *9 E. 38th St. Assocs. L. P. v. George Feher Assocs.,* 226 A.D.2d 167, 168, 640 N.Y.S.2d 520 (1st Dep't 1996) (same). *Second Department*: *Rosen v. Kessler,* 51 A.D.3d 761, 856 N.Y.S.2d 861 (2d Dep't 2008) (same); *Hart v. Jassem,* 43 A.D.3d 997, 998, 843 N.Y.S.2d 121 (2d Dep't 2007) (same). *Third Department*: *Matter of Moak*, 92 A.D.3d 1040, 938 N.Y.S.2d 648 (3d Dep't 2012) (same); *Sugar Foods De Mexico v. Scientific Scents, LLC,* 79 A.D.3d 1551, 1552, 914 N.Y.S.2d 352 (3d Dep't 2010) (same). *Fourth Department*: *Nasca v. DelMonte,* 111 A.D.3d 1427, 975 N.Y.S.2d 317 (4th Dep't 2013) (same); *H & R Project Assocs. v. City of Syracuse,* 289 A.D.2d 967, 737 N.Y.S.2d 712 (4th Dep't 2001) (same).

The federal courts have also dismissed causes of action on the same basis where the issue was properly raised. In *Taberna Capital Mgmt., LLC v. Dunmore,* 2009 U.S. Dist. LEXIS 79811, 11-12 (S.D.N.Y. Sept. 1, 2009), Judge Rakoff dismissed the fifth cause of action alleging "alter ego" on this basis. *See also Carruthers v. Flaum,* 365 F. Supp. 2d 448, 474 (S.D.N.Y. 2005) ("New York law does not recognize a separate cause of action to pierce the corporate veil.").

The case of *Boczar v. Greene*, 2008 NY Slip Op 30138(U), 2008 N.Y. Misc. LEXIS 8250 (Sup. Ct., N.Y. Co., 2008), is illustrative. In *Boczar,* the plaintiff (like the plaintiff in our case) had already received judgment against a corporate entity via a

---

[3] Even were such holdings ascribed solely to the four Appellate Departments (which they are not), federal courts "consider the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule." *DiBella v. Hopkins,* 403 F.3d 102, 112 (2d Cir. 2005).

confirmed arbitration award. After the apparent inability to collect on the judgment, the plaintiff commenced a lawsuit against the corporate entity's CEO, by asserting a claim to pierce the corporate veil, alleging that while the CEO was in control of the corporate entity, he dissipated, transferred, and fraudulently concealed its assets, and thereby hindered the plaintiff's efforts to collect on his judgment. The court dismissed the claim, holding that in New York, no such cause of action exists. The court further implied that had the underlying case been a court case as opposed to an arbitration, the new law suit would have also been barred by res judicata as well, 2008 LEXIS 8250, at *5 - 6 , something that we explain further below.

Thus, for this reason alone, Count I of the amended Complaint should be dismissed.

### III.

### IN ANY EVENT THE CLAM IS PRECLUDED BY THE DOCTRINE OF RES JUDICATA

Plaintiff's attempt to pierce the corporate veil at this late juncture should also be barred based on the doctrine of res judicata.

It is well settled that judgments entered pursuant to settlement are entitled to res judicata effect. *Matter of People of the State of New York, by Eliot Spitzer, as Attorney Gen. v. Applied Card Sys., Inc.,* 11 N.Y.3d 105, 124-125 (2008); *Olympic Tower Assocs. v. New York,* 81 N.Y.2d 961 (1993) (same).

In the underlying case here, a judgment was entered pursuant to a settlement:[4] It is undisputed that plaintiff's judgment, dated October 28, 2010, resolved the specific underlying claims of that action (Adversary Proceeding Number 09-01162-(AJG)

---

[4] Which, as we explain above, is entitled to res judicata effect.

S.D.N.Y Bankruptcy Court). In that action, Counterclaiming Defendant AFTC, plaintiff

in this action, asserted four standard counts of breach of contract of a purchase and sale

agreement and various lease agreements -- not a fraud action -- against GFI Acquisition,

LLC, A & M Florida Properties, LLC, A & M Florida Properties II LLC, and A & M

Florida Properties III LLC.  Plaintiff was of the belief at that time that Allen Gross owned

and controlled the entities; the pleading filed by plaintiff in that action on July 7, 2009

stated so:

> Beginning in the summer 2000, each of the four apartment
> complexes were leased to various entities *owned and
> controlled by Allen Gross*, an investor from New York.
> These various entities were known as A&M Florida
> Properties, LLC (as to Carib Villas and Cutlerwood in
> Miami-Dade County), A&M Florida Properties II, LLC (as
> to Palm Gardens in Broward County) and A&M Florida
> Properties III, LLC (as the Shady Oaks property located in
> Pinellas County) (collectively the A&M Entities or
> Tenants). . . Approximately seven years after the first two
> leases were executed, *Allen Gross expressed his desire* to
> purchase all four of the Apartment houses.

AFTC Counterclaim at ¶¶ 8 - 9, attached to the Declaration of Zelmanovitz as Exhibit B

(Emphasis added).

Thus, the parties in the underlying action that was settled, are parties here. Res

judicata precludes relitigation of claims relating to the same transaction against those

parties (i.e., breach of contract) which was the subject of the underlying

lawsuit/settlement. Although the Grosses were not technically "parties" to the Florida

case in their individual capacities, they were in privity with the named parties in the

action and they signed the settlement stipulation both as the members' of the parties and

in their individual capacities with respect to their not being liable in such capacities.

"Claim preclusion bars the relitigation . . . of claims that were, or could have been,

brought in an earlier litigation between the same parties or their privies." *Bank of N.Y. v. First Millennium, Inc.,* 607 F.3d 905, 919 (2d Cir. 2010). Privity has been easily found in similar situations. *See generally Burberry Ltd. v. Horowitz,* 534 Fed. Appx. 41, 42-44 (2d Cir. 2013) (privity exists between an individual shareholder and a company, where the individual is a founder, president, chairman of the board, and a substantial shareholder, and participated in and controlled an earlier lawsuit brought on the company's behalf). Accordingly, not only were the Grosses in privity to the parties named and thereby entitled to the res judicata benefits, the Grosses became parties in the underlying action by entering into the settlement agreement.[5]

Additionally, GFI Management is entitled to res judicata treatment. As part of the settlement, plaintiff settled all claims relating to turnover and avoidance claims and accepted a payment of $100,000.00 from GFI Management, the corporate defendant in this action. Plaintiff did so even though GFI Management was not named as a party to the Adversary Proceeding and even though plaintiff not require that GFI Management sign the final settlement agreement.

Plaintiff cannot avoid dismissal by virtue of the doctrine of res judicata by ignoring the underlying breach of contract claim and labeling its cause of action as "Alter Ego/Piercing the Corporate Veil."  Plaintiff cannot be allowed to belatedly attempt to pierce the corporate veil in this action, which is *not* a breach of contract action. *See Boczar,* 2008 N.Y. Misc. LEXIS 8250 at * 7 - 8. And in order to maintain such a breach of contract-piercing the corporate veil claim, New York courts require that the "dummy

---

[5] The settlement and subsequent judgment are attached to the Amended Complaint as Exhibits 4 and 5, respectively. The settlement, which is signed by the Gross Defendants on behalf of themselves and the entities, clearly states that they have no individual liability under the settlement and judgment.

entities" in the action involving allegations of veil piercing be joined, which they are not. *Boczar*, *supra* at * 8,  (citing *Stewart Tenants Corp. v. Square Indus., Inc.,* 269 A.D.2d 246, 248, 703 N.Y.S.2d 453 (1st Dep't 2000)).

   Plaintiff cannot now try to reverse the part of the settlement agreement that states that "Gross and Edith Gross do not acknowledge or admit any personal liability with respect to any claims." If plaintiff had wanted to litigate that issue in the underlying action, it necessarily would have been brought as part of the Adversary Proceeding and plaintiff should not have settled in the matter it did. In other words, plaintiff cannot re-litigate the breach of contract cause of action in order to receive a judgment against GFI Management and the Gross Defendants, something it could have done in the first instance. *Schulz v. Williams,* 44 F.3d 48, 55 (2d Cir. 1994) ("It is well established under . . . New York . . . law that a party to an action who had the opportunity to raise a claim, but failed to do so, is barred from raising that claim in a subsequent action."); *Leptha Enters., Inc. v. Longenback,* 1991 U.S. Dist. LEXIS 12625, No. 90 Civ. 7704 (KTD), 1991 WL 183373, at *2 (S.D.N.Y. Sept. 9, 1991) ("The defensive use of res judicata is not precluded when a plaintiff settles a prior pending action knowing the present defendant's role in the activities which formed the basis of the prior suit but chose not to name that defendant as party to that suit."). In this vein, the Second Department in *Rosen v. Kessler,* 51 A.D.3d 761, 856 N.Y.S.2d 861 (2d Dep't 2008), stated that the "doctrine of res judicata precludes the instant action because it arises from the same transactions as a prior action and, given that New York does not recognize a separate cause of action to pierce the corporate veil, it differs from the prior action only in the theory of recovery." (citations omitted).

In sum, Count I of the Complaint should be dismissed for the failure to state a claim for relief and under principles of res judicata.

**IV.**

**COUNT I SHOULD BE DISMISSED**
**BECAUSE THE CORPORATE VEIL MAY NOT BE PEIRCED ABSENT**
**FRAUD OR WRONG WHICH HAS NOT BEEN PROPERLY PLED**

Plaintiff's first count, seeking to pierce the corporate veil, fails as a matter of law because the Complaint fails to properly plead facts supporting a fraud or wrong perpetrated by defendants against plaintiff. Certainly, such facts have not been pled with sufficient particularity.

**A.    Absence of Fraud or Wrong**

The corporate veil  may not be pierced absent a showing of fraud or wrong. *James v. Loran Realty V Corp.,* 20 N.Y.3d 918, 919, 980 N.E.2d 532, 956 N.Y.S.2d 482 (2012) ("Plaintiffs, as the party seeking to pierce the corporate veil, had the burden to show that the individual defendants abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against them.'"); *TNS Holdings Inc. v. MKI Sec. Corp.,* 92 N.Y.2d 335, 339, 703 N.E.2d 749, 680 N.Y.S.2d 891 (1998) ("Those seeking to pierce a corporate veil of course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences . . . Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance."); *Morris v. N.Y.S. Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993) ("[Piercing the corporate veil] requires a showing that: (1) the owners exercised complete domination of the corporation in respect

14

to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."); *Broadridge Secs. Processing Solutions, LLC v. Khashoggi,* 507 Fed. Appx. 57, 57-58 (2d Cir. 2013) (citing *Morris v. N.Y.S. Dep't of Taxation & Fin.*); *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir. 1988) ("such domination must have been used to 'commit fraud or wrong' against plaintiff, which proximately caused plaintiff's injury."); *Magnuson v. Newman,* 2013 U.S. Dist. LEXIS 138595, at * 39-40 (S.D.N.Y., Sept. 25, 2013) (same).

As the New York Court of Appeals explained in *Morris*, "it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Id.* at 140. *See also Bartle v. Home Owners Cooperative, Inc.,* 309 N.Y. 103, 106, 127 N.E.2d 832 (1955) ("The law permits the incorporation of a business for the very purpose of escaping personal liability."); *Flushing Plaza Assoc. #2 v. Albert,* 102 A.D.3d 737, 738, 958 N.Y.S.2d 713, 714 (2d Dep't 2013) ("One of the primary legitimate purposes of incorporating is to limit or eliminate the personal liability of corporate principals.").

The Second Circuit has explained that veil piercing is a narrow exception to the doctrine of limited liability for corporate entities, and that courts should permit veil-piercing only under "extraordinary circumstances." *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir. 1996).

Similarly, "a simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing of the corporate veil." *Bonacasa Realty Co., LLC v. Salvatore,* 109 A.D.3d 946, 947, 972 N.Y.S.2d 84 (2d Dep't 2013). It is well established that the claimed fraud or injustice must consist of more than merely the tort or breach of

contract that is the basis of the plaintiff's lawsuit. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 183 (2d Cir. 2008).

Here, as the Complaint itself makes clear, the premise of the suit is the fact that GFI Management, Mr. Gross and Mrs. Gross allegedly created single purpose entities to shield themselves from potential future liability of a breach of contract. Only conclusory allegations of fraud are alleged. Nor is wrongdoing competently alleged. Any alter ego analysis must fail without such allegations. Indeed, the Complaint admits that for at least seven years, commencing in the year 2000, the A & M Entities operated their leases as they had contracted with AFTC to do. It is inconceivable that a fraud or wrong perpetrated well over seven years prior -- with the formation of corporations for purposes of limiting defendants' liability (something that is specifically permitted by law) -- could adequately form the basis for this lawsuit, which arises from a dispute over an agreement to purchase the subject properties subsequent to the year 2007.

Establishing single-purpose entities for real estate transactions is not something unique or in any way nefarious. It is a recognized, well-established structure employed by parties in the *real estate* business, including lending institutions.[6] Here, as the Court of Appeals has stated in *Morris.,* 82 N.Y.2d at 145, "[t]here is no showing that [the

---

[6] As the court explained in *In re Gen. Growth Props.,* 409 B.R. 43, 49 (Bankr. S.D.N.Y. 2009), ("Sometimes referred to as a "single-purpose entity" or "bankruptcy remote entity," an SPE has been described by one commentator as "an entity, formed concurrently with, or immediately prior to, the closing of a financing transaction, one purpose of which is to isolate the financial assets from the potential bankruptcy estate of the original entity, the borrower or originator." David B. Stratton, Special-Purpose Entities and Authority to File Bankruptcy, 23-2 Am. Bankr. Inst. J. 36 (March 2004). "Bankruptcy-remote structures are devices that reduce the risk that a borrower will file bankruptcy or, if bankruptcy is filed, ensure the creditor procedural advantages in the proceedings." Michael T. Madison, et. al., The Law of Real Estate Financing, § 13:38 (2008).").

corporate entity] was *set up* as a sham or for the purpose of tax avoidance." (Emphasis added).

This is especially true with regard to the two Gross Defendants. Plaintiff's Complaint never pleads that the Gross Defendants used the corporations for their own personal interests rather than the corporations' business interests. The entire Complaint truly rests on the allegation that all of the affiliated businesses were really one giant organization, which does not provide for personal liability against the individual Gross Defendants. *See Generally Walkovszky v. Carlton,* 18 N.Y.2d 414, 417 276 N.Y.S.2d 585 (1966) ("[I]t is one thing to assert that a corporation is a fragment of a larger corporate combine which actually conducts the business . . .  It is quite another to claim that the corporation is a "dummy" for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends. In the first, only a larger corporate entity would be held financially responsible . . . while, in the other, the stockholder would be personally liable.").

.       Additionally, the Complaint's general allegations, that defendants manipulated the assets of their wholly-owned and affiliated entities for the purpose of "defrauding creditors" and leaving these entities in a position "to avoid collection," Compl. at ¶ 4, are simply conclusory, and do not relate to or form an adequate basis to pierce the corporate veil under present day New York law.

Simply put, Plaintiff's inability to plausibly support allegations of defendants' fraud and wrongdoing, coupled by the lack of causation for plaintiff's injury, require dismissal with prejudice as to Count I of its Complaint.

17

**B.**      **The Complaint Fails to Particularize Allegations of Fraud or Wrong**

Pursuant to Fed. R. of Civ. P. 9(b), allegations of fraud must be stated with particularity.  Although scienter need not be alleged with great specificity, a plaintiff is still required to plead the factual basis which gives rise to a strong inference of fraudulent intent. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990).

"A claimant must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b) to the extent that its veil-piercing claim rests on allegations of fraud." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002). Further, even if the Court were to apply the liberal pleading standard of Rule 8(a)(2), purely conclusory allegations cannot suffice to state a claim based on veil-piercing. *In re Currency Conversion Fee Antitrust Litigation,* 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).

Here, as has already been demonstrated, New York law requires a showing of fraud or wrong in order to pierce the corporate veil. An alter ego analysis is insufficient. *TNS Holdings Inc.,* 92 N.Y.2d at 339. Similarly, allegations that a corporation was formed to limit liability is not a basis for piercing the corporate veil -- that is why corporate entities are formed. *Morris,* 82 N.Y.2d at 140. Therefore, the Complaint's allegations are not pled to any degree of particularity as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant defendants' motion and dismiss Count I of the Amended Complaint, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Dated: New York, New York
　　　　February 10, 2014

STAHL & ZELMANOVITZ
*Attorneys for Defendants*
*GFI Management Services, Inc.,*
*Allen I. Gross, and Edith Gross*


By: /s/ Joseph Zelmanovitz
　　　Joseph Zelmanovitz (JZ-0085)
　　　Abraham Neuhaus (AN-5030)
747 Third Avenue, Suite 33B
New York, New York 10017
(212) 826-6422

19