UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 1 5 2014
```

-------------------------------------------------------------------X

AMERICAN FEDERATED TITLE CORP.,               :
                                              :
                      Plaintiff,              :               13-cv-6437 (AJN)
                                              :
        -v-                                   :               MEMORANDUM &
                                              :               ORDER
GFI MANAGEMENT SERVICES, INC., ALLEN I.       :
GROSS, and EDITH GROSS,                       :
                                              :
                      Defendants.             :
-------------------------------------------------------------------X

ALISON J. NATHAN, District Judge:

      Defendants GFI Management Services, Inc. ("GFI Management"), Allen I. Gross, and

Edith Gross move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count I of

Plaintiff American Federated Title Corp.'s amended complaint, which seeks to hold Defendants

liable for a prior judgment entered against two corporate entities alleged to be Defendants' alter

egos. For the following reasons, Defendants' motion is denied.

I.     **Background**

      The following factual allegations are drawn from Plaintiff's amended complaint, Dkt. No.

20, and for purposes of Defendants' motion are assumed to be true. *See Kassner v. 2d Ave.*

*Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

      Plaintiff is a Florida corporation that acts as trustee for a number of land trusts holding

real property in Florida. Am. Compl. ¶¶ 5, 12. In 2000, Plaintiff leased four properties to three

entities owned and controlled by the Grosses (the "A&M Entities"). *Id.* ¶¶ 13, 16. After the

A&M Entities entered into the leases, GFI Management, an "operating entity" also controlled by

the Grosses, took control of and managed the properties. *Id.* ¶¶ 19, 47.

In 2007, Allen Gross notified Plaintiff that he was interested in buying the properties that the A&M Entities had leased. Am. Compl. ¶ 21. He formed an entity called GFI Acquisition, LLC ("GFI Acquisition"), which entered into a purchase and sale agreement with Plaintiff under which Plaintiff would sell the properties to GFI Acquisition for $41,457,647. *Id.* ¶¶ 22–23. When that contract was signed, Allen Gross negotiated an "adjournment" of rent that the A&M Entities owed to Plaintiff, under which that rent would instead be added to the purchase price paid for the properties by GFI Acquisition. *Id.* ¶ 24. Plaintiff also agreed to delay the closing date for the sale of the properties. *Id.* ¶ 25. During this period, Defendants continued collecting subtenant rent (through the A&M Entities) without paying anything to Plaintiff. *Id.*

On the closing date for the purchase, GFI Acquisition failed to attend the closing, pay any agreed-upon deposits, or prepare closing documents as it had agreed to do under its contract with Plaintiff. Am. Compl. ¶ 26. GFI Acquisition and the A&M Entities then sued Plaintiff in Florida state court, a lawsuit that Plaintiff challenged as a "sham." *Id.* ¶¶ 27–28. Thereafter, two of the A&M Entities filed for bankruptcy in the Southern District of New York, the Florida claims against Plaintiff were transferred to that court, and those claims were eventually dismissed on summary judgment. *Id.* ¶¶ 29–30. As part of the bankruptcy proceeding, Plaintiff asserted its own claims against the A&M Entities for unpaid rent and against GFI Acquisition for breaching the purchase and sale contract. *Id.* ¶ 31.

On October 20, 2010, Plaintiff, the A&M Entities, and GFI Acquisition entered into a settlement stipulation resolving Plaintiff's claims. Am. Compl. ¶ 31; *see id.* Ex. 4. Pursuant to the terms of that stipulation, the bankruptcy court entered a final judgment providing that Plaintiff was entitled to $7,000,000 from the A&M Entities and $500,000 from GFI Acquisition. *Id.* ¶ 34; *see id.* Ex. 5.

Plaintiff then sought post-judgment discovery in New York state court pursuant to § 5222 of New York's Civil Practice Law and Rules ("CPLR").  The A&M Entities and GFI Acquisition initially refused to provide such discovery until the court granted Plaintiff's motion for contempt and motion to compel.  Am. Compl. ¶ 39.  After the A&M Entities and GFI Acquisition then produced roughly 3,000 pages of documents, Plaintiff uncovered what it alleges are abuses of the entities' corporate form by Defendants.  *Id.* ¶ 42.  (The Court will describe these allegations in greater detail later in this opinion.  *See infra* section III.C.)  To date, Plaintiff "has been unable to identify any recoverable assets of the A&M Entities or GFI Acquisition that are currently still in those entities' possession," and the bankruptcy court's final judgment "remains completely unsatisfied."  Am. Compl. ¶ 48.

Plaintiff brought this action on September 12, 2013.  Defendants moved to dismiss Plaintiff's veil-piercing claim (Count I) on November 26, 2013, and pursuant to Rule 3.F of this Court's individual practices in civil cases, Plaintiff amended its complaint in response to Defendants' motion.  Defendants again moved to dismiss Count I on February 10, 2014, and that motion was fully submitted as of March 24, 2014.  The parties have been engaged in discovery on Plaintiff's other claims pursuant to a case management plan and scheduling order entered by the Court on May 30, 2014.  Dkt. No. 47.

## II.    Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  At this stage,

the Court must draw all reasonable inferences in favor of the non-moving party, *see Kassner*, 496 F.3d at 237, but it need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555.  In addition to the amended complaint itself, the Court may consider documents attached as exhibits, incorporated by reference, or relied upon by Plaintiff in bringing suit, as well as judicially noticeable matters. *See Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir.2011); *In re Harbinger Capital Partners Funds Investor Litig.*, No. 12-cv-1244 (AJN), 2013 WL 5441754, at *15 n.6 (S.D.N.Y. Sept. 30, 2013).

Additionally, as explained below, the Court assumes arguendo that certain of Plaintiff's allegations must meet the heightened pleading standards of Rule 9(b).  *See infra* section III.C. Under Rule 9(b), a plaintiff alleging fraud must state "with particularity" the circumstances that amount to fraud.  "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (Easterbrook, J.). *See generally* 5A Charles Alan Wright et al., *Federal Practice & Procedure: Civil* § 1298 (3d ed. 2004 & Supp. 2014).  Although the Rule provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

## III.   Discussion

Plaintiff's amended complaint contains four counts.  Count I, entitled "Alter Ego/Piercing the Corporate Veil," alleges that Defendants dominated and controlled the A&M Entities and GFI Acquisition, and used their control to prevent Plaintiff from recovering the full amount of the bankruptcy court's judgment against those entities.  Am. Compl. ¶¶ 105–109.  Counts II, III, and IV allege fraudulent conveyances under sections 273, 273-A, and 276 of New York's Debtor

and Creditor Law, respectively. *Id.* ¶¶ 110–128.  Defendants move to dismiss Count I on three grounds: (1) that there is no independent cause of action for piercing the corporate veil, (2) that Plaintiff's claim is barred by res judicata, and (3) that Plaintiff's claim is inadequately pled. Plaintiff contends that Defendants waived their first two arguments by failing to raise them in their prior motion to dismiss, *see* Pl. Opp. at 4, but the Court need not address this issue because Defendants' arguments fail on their merits.

### A. Plaintiff May Bring a Veil-Piercing Claim in this Procedural Posture

As Plaintiff's complaint makes clear, this is "an action for post-judgment relief" seeking recovery on a federal judgment owed to Plaintiff by A&M Entities and GFI Acquisition.  Am. Compl. ¶ 1.  Federal Rule of Civil Procedure 69(a) provides that when a plaintiff seeks a post-judgment writ of execution, "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located."  Plaintiff has invoked New York's CPLR § 5225(b), *see* Pl. Opp. at 7, which allows a judgment creditor to institute a "special proceeding" against an entity in custody or possession of money owed to it by a judgment debtor:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff . . . .  Notice of the proceedings shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. . . .

The Court agrees with Plaintiff that its veil-piercing claim against Defendants may properly be maintained under this provision.

First, courts have held that the relief available under CPLR § 5225(b) may be sought by way of a complaint filed in federal court, as opposed to the "petition" required by the New York rules governing special proceedings.[1] *See CSX Transp., Inc. v. Filco Carting Corp.*, No. 10-cv-1055 (NGG) (JMA), 2011 WL 2713487, at *2 (E.D.N.Y. July 11, 2011) ("Despite the statute's 'upon a special proceeding' language, CPLR § 5225(b) is satisfied for purposes of enforcing a registered, federal district court judgment when the plaintiff proceeds by complaint in federal court."); *Tiffany (NJ) LLC v. Dong*, 11-cv-2183 (GBD) (FM), 2013 WL 4046380, at *10 (S.D.N.Y. Aug. 9, 2013) (report and recommendation) ("[F]ederal courts . . . have deemed the CPLR special proceeding requirement satisfied when a plaintiff proceeds by complaint or motion against the third party holding a judgment debtor's assets."). Second, courts have also permitted veil-piercing claims under CPLR § 5225(b) as a means of holding a corporation's owners liable for prior judgments against their corporation. *See Cordius Trust v. Kummerfeld*, 153 F. App'x 761, 762–63 (2d Cir. 2005); *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 123 (E.D.N.Y. 2010). Thus, claims like Plaintiff's—veil-piercing claims brought by way of a federal complaint—are appropriate under Rule 69(a) and the New York procedural rules to which Rule 69(a) instructs federal courts to look.

---

[1] While Rule 69(a) requires federal courts to look to state procedural law, courts have taken a flexible approach and sanctioned departures from state procedures when they are consistent with the spirit of the Rule. *See Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 123–25 (E.D.N.Y. 2010) (discussing this issue); *see also, e.g., Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) (Posner, J.) ("We do not think the draftsmen of Rule 69 meant to put the judge into a procedural straitjacket, whether of state or federal origin."). Indeed, this flexibility is consistent with New York law. *See* NY CPLR § 103(c) ("If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form . . . ."); *LaBarbera v. Audax Constr. Corp.*, 971 F. Supp. 2d 273, 281 (E.D.N.Y. 2013).

Defendants contend that Plaintiff's complaint is deficient when measured against the requirements of CPLR § 5225(b) because it neither identifies the person in possession or custody of the judgment debtors' assets nor seeks to require that person to pay sufficient money to satisfy the judgment. Def. Reply at 6. This argument strains credulity. Plainly, *Defendants* are alleged to be in custody of the debtors' assets, *see* Am. Compl. ¶ 106 (alleging that "Defendants used their domination and control over the A&M Entities and GFI Acquisition to improperly transfer assets away from these entities"), and the entire purpose of Plaintiff's lawsuit is to force Defendants to pay those entities' debts. Defendants also claim that notice of this action was not served on the judgment debtors, but they do not cite any authority indicating that that would be grounds for dismissal, and in any case Plaintiff's allegations—which claim that Defendants are alter egos of the judgment debtors—sufficiently suggest that the judgment debtors are very much aware of this lawsuit. *See also* NY CPLR § 2001 (allowing courts to disregard procedural irregularities where "a substantial right of a party is not prejudiced").

Defendants also argue, more generally, that veil-piercing claims cannot be brought as independent causes of action, relying primarily on *Morris v. New York State Department of Taxation and Finance*, 82 N.Y.2d 135 (1993). Def. Br. at 8–10. In *Morris*, the New York Court of Appeals stated that "an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." 82 N.Y.2d at 141; *see also, e.g.*, *Taberna Capital Mgmt., LLC v. Dunmore*, No. 08-cv-1817 (JSR), 2009 WL 2850685, at *4 (S.D.N.Y. Sept. 2, 2009). But *Morris* and its progeny are simply inapplicable when the corporation has already been held liable and a third party brings a

later action seeking to enforce the judgment against its owners.[2]  Otherwise, the numerous cases recognizing that judgment creditors may bring veil-piercing claims under CPLR § 5225(b) would all be incorrect.  *See WBP Cent. Associates, LLC v. DeCola*, 855 N.Y.S.2d 210, 211 (2d Dep't 2008) (collecting cases).  Indeed, in *Cordius Trust*, the Second Circuit held that a plaintiff properly brought a veil-piercing action under Rule 69(a) and CPLR § 5225(b) immediately after it quoted the same language from *Morris* on which Defendants rely.  *See* 153 F. App'x at 762–63.  In short, Plaintiff has properly asserted a post-judgment veil-piercing claim.

### B.  Plaintiff's Claim Is Not Barred by Res Judicata

Next, Defendants argue that Plaintiff's veil-piercing claim is barred by res judicata.[3]  Def. Br. at 10–14.  The Court disagrees.

Under the principle of res judicata, or claim preclusion, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (1999) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)) (emphasis and internal quotation marks omitted).  However, claims seeking to enforce prior judgments against parties who were not parties to the prior lawsuit are not considered attempts to re-litigate issues already decided.  *See Winchester Global Trust Co. v. Donovan*, 22 Misc.3d 1119(A), 2009 WL 294685, at *8 (Sup. Ct. N.Y. Feb. 4, 2009).  The issue of contractual liability was litigated in a proceeding in which

---

[2] *Boczar v. Greene*, 2008 N.Y. Misc. LEXIS 8250 (Sup. Ct. N.Y. Jan. 16, 2008), relied on by Defendants, involved a veil-piercing action brought to recover an arbitration award, not a federal court judgment.

[3] In their reply brief, Defendants state that Plaintiff's claims are barred by "res judicata *and* collateral estoppel," Def. Reply at 7 (emphasis added), but courts do not consider arguments raised for the first time in reply briefs, *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003), and Defendants do not explain why collateral estoppel applies.

Defendants here were not parties,[4] and it involved issues distinct from whether Defendants are liable on a veil-piercing theory. *Id.*

The cases Defendants cite are simply inapposite. For example, in *Rosen v. Kessler*, 51 A.D.3d 761 (2d Dep't 2008), the individual defendant whom the plaintiff sought to reach via veil-piercing was a defendant in the prior action, in which the court had determined that the veil should not be pierced. *See Rosen v. Kessler*, 15 Misc.3d 1139(A), 2007 WL 1519063, at *1–3 (Sup. Ct. N.Y. Apr. 24, 2007) (describing earlier opinion in which "the Appellate Division found that there was no basis upon which to pierce the corporate veil and hold defendant Kessler personally liable") (citations omitted). Unlike in this case, the plaintiff was attempting to re-litigate the very same issue that had already been decided against it.

Defendants also point out that res judicata bars re-litigation of claims not only between the same parties but also between the parties' "privies," and argue that as the judgment debtors' shareholders, "the Grosses were in privity to the parties named" in the bankruptcy proceeding. Def. Br. at 12 (citing *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 42–44 (2d Cir. 2013)). As explained above, however, the Grosses cannot have been in privity with the judgment debtors with respect to any previously litigated veil-piercing claim because there *was* no previously litigated veil-piercing claim. Defendants' argument would also logically imply that *all* post-judgment veil-piercing claims against a corporation's owners are barred by res judicata because those owners are necessarily in privity with the corporation against which the judgment was

---

[4] Defendants point out that the Grosses signed the settlement stipulation in the prior action, but they signed the stipulation in full only in their corporate capacity on behalf of two A&M Entities. *See* Am. Compl. Ex. 4 at 8. The Grosses also signed the stipulation in their individual capacity with respect to paragraph 15, *see id.* at 8–9, which (as relevant here) provided that the Grosses did not admit liability with respect to any future claims against them—indicating that such claims were not, in fact, resolved under the prior settlement.

rendered. The cases cited above that entertained post-judgment veil-piercing claims pursuant to CPLR § 5225(b) are sufficient to illustrate that Defendants' position is not the law.

Nor can Defendants prevail by pointing out that res judicata "bars the relitigation . . . of claims that were, *or could have been*, brought in an earlier litigation." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010). For a claim to be barred based on the fact that it *could* have been brought in a prior action, the claim logically must have arisen before the prior action. *See id.* ("Claim preclusion does not bar claims, even between identical parties, that arise after the commencement of the prior action."). Yet Plaintiff states that it was unaware that the judgment debtors had insufficient assets to pay the bankruptcy settlement until after judgment was entered. Am. Compl. ¶¶ 36–43. Moreover, on Defendants' theory, any time a plaintiff sues a corporation, it would effectively be required to join the corporation's owners or be barred from later recovering on the judgment from the owners in a separate veil-piercing action. Again, the fact that courts have entertained post-judgment veil-piercing claims under CPLR § 5225(b) implies that Defendants cannot be correct.

### C. Plaintiff's Claim Is Adequately Pled

In addition to the procedural arguments that the Court has already rejected, Defendants also contend that Plaintiff's veil-piercing allegations fail to state a claim on which relief can be granted. Def. Br. at 14–18. New York courts will pierce the corporate veil and hold a corporation's owners liable for its debts when "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) . . . such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris*, 82 N.Y.2d at 141; *see also TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998) (describing the "heavy burden of showing that the corporation was dominated as to the

transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences").[5]  For the following reasons, the Court concludes that Plaintiff has adequately pled a veil-piercing claim.

First, Plaintiff adequately pleads that Defendants "exercised complete domination" of the A&M Entities and GFI Acquisition.  In considering whether a corporation has been sufficiently dominated to justify piercing the corporate veil, New York courts consider a number of factors, including:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991); *Stahlex-Interhandel Trustee, Reg. v. W. Union Fin. Servs. E. Europe Ltd.*, No. 99-cv-2246 (RWS), 2002 WL 31359011, at *7 (S.D.N.Y. Oct. 21, 2002).  As explained below, Plaintiff's complaint contains abundant well-pleaded factual allegations going to essentially all of these factors for both the A&M Entities and GFI Acquisition.  Indeed, Plaintiff further bolsters the plausibility of these allegations by citing specific deposition testimony and other discovery that it has already obtained.

---

[5] Defendants accuse Plaintiff of improperly relying on cases suggesting that *either* domination *or* a "fraud or wrong" is sufficient to pierce the corporate veil, *see* Def. Reply at 9 n.6, but Plaintiff clearly recognizes that it must establish both domination and a "fraud or wrong."  *See* Pl. Opp. at 14 (describing domination); *id.* at 17 (describing "wrong").

With respect to the A&M Entities, the complaint alleges that the Grosses paid security deposits on behalf of the A&M Entities from their own funds without a loan agreement or other formal documentation, suggesting a lack of corporate formalities, lack of arm's length dealing, and payment of the dominated corporation's debts (factors (1), (7), and (9)). Am. Compl. ¶ 18. Along similar lines, the complaint describes various transfers between the A&M Entities and other entities controlled by Defendants, which were not made in writing, were approved verbally by GFI Management, and were not documented by loan agreements or promissory notes. *Id.* ¶¶ 61–65. The A&M Entities paid no interest on these "loans." *Id.* ¶ 66. The complaint also alleges that Defendants were entirely responsible for the A&M Entities' administrative services, accounting, book-keeping, record-keeping, payroll, and staffing, suggesting that the A&M Entities had no business discretion of their own (factor (6)). *Id.* ¶¶ 19, 83, 101. It further alleges that the A&M Entities share common office space with GFI Management in New York, and that GFI Management employees supervised the day-to-day operations of the A&M Entities related to the properties at issue in this case (factors (4) and (5)). *Id.* ¶¶ 94–96, 102. Finally, the A&M Entities allegedly did not hold corporate meetings, keep corporate minutes or records, or conduct votes to authorize corporate actions (factor (1)). *Id.* ¶¶ 91–93.

With respect to GFI Acquisition, the complaint alleges that GFI Acquisition's contractual obligations were funded entirely by Allen Gross and GFI Resources, which is alleged to be 100% controlled by Allen Gross. Am. Compl. ¶¶ 56, 44. This suggests both inadequate capitalization and payment of the dominated corporation's debts (factors (2) and (9)). GFI Acquisition also shares the same office space as the A&M Entities and GFI Management (factor (5)). *Id.* ¶ 94. Moreover, the complaint alleges that GFI Acquisition was created solely as a vehicle for buying properties from Plaintiff, and was not even intended to acquire the properties for its own

12

purposes. *Id.* ¶¶ 97–98. These allegations suggest that GFI Acquisition had no independent corporate purpose or business discretion and was not treated as an independent profit center (factors (6) and (8)). And, like the A&M Entities, GFI Acquisition allegedly did not observe traditional corporate formalities such as holding corporate meetings, keeping records, or voting (factor (1)). *Id.* ¶¶ 91–93.

Indeed, Defendants do not seriously challenge the adequacy of Plaintiff's allegations involving Defendants' complete domination of the A&M Entities and GFI Acquisition. Instead, they argue that Plaintiff has not adequately pled that this domination "was used to commit a fraud or wrong" against Plaintiff that resulted in Plaintiff's injury. *Morris*, 82 N.Y.2d at 141; *see* Def. Br. at 14. The Court disagrees.

As an initial matter, the parties dispute the pleading standard that should apply to Plaintiff's allegations of "a fraud or wrong." Plaintiff argues that it is not actually alleging fraud, Pl. Opp. at 13, and that because it is instead claiming a "non-fraudulent 'wrong' attributable to the defendant's complete domination," its complaint should be evaluated under Rule 8(a), not the more stringent standards imposed by Rule 9(b). *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002) (Lynch, J.) (quoting *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 122 (S.D.N.Y. 1996)). Defendants disagree, arguing that Plaintiff is alleging fraud in substance, and that its complaint must therefore be measured against Rule 9(b)'s standards. Def. Br. at 18. The Court need not resolve this debate, because Plaintiff's allegations are sufficient to withstand Defendants' motion even under the heightened standard applicable to fraud claims.

New York courts have held that using a completely dominated "'dummy' or 'shell' company created for the sole purpose of signing [a] lease," then breaching the lease, is a

sufficient wrong to justify piercing the corporate veil. *Ventresca Realty Corp. v. Houlihan*, 41 A.D.3d 707, 709 (2d Dep't 2007); *see also Flushing Plaza Assocs. No. 2 v. Albert*, 102 A.D.3d 737, 739 (2d Dep't 2013) (piercing veil of shell company that breached lease with plaintiff and then transferred money to its controlling shareholder, leaving it judgment proof, while continuing to collect subtenant rents). In this case, Plaintiff alleges that the A&M Entities were created solely to lease the properties from Plaintiff, that GFI Acquisition was created to purchase the properties, and that these entities had no assets when they were formed. Am. Compl. ¶¶ 14–15, 22. Plaintiff also describes, in substance, a scheme under which the A&M Entities negotiated a deferral of their rental payments while the sale of the properties to GFI Acquisition was pending; GFI Acquisition deferred the sale while Defendants continued to collect subtenant rents (through the A&M Entities) during the deferral period; the A&M Entities and GFI Acquisition repudiated their contract with Plaintiff when the time came to pay; and when Plaintiff sought to recover for that breach, the entities were judgment proof. *Id.* ¶¶ 24–27. According to Plaintiff, the A&M Entities had insufficient assets to satisfy the judgment against them because of "management fees" that they paid to Defendants and Defendants' use of the entities to pay GFI Management's own operating expenses. *Id.* ¶¶ 19–20, 83–86. And, as described above, Defendants allegedly made frequent transfers of funds between the various entities under their control, which were informal and not memorialized in agreements or promissory notes.

In light of these allegations, the Court concludes that Plaintiff has adequately linked its inability to collect on its judgment to affirmative acts taken by Defendants—i.e., "stripping" the A&M Entities and GFI Management through transfers, management fees, and expense payments—that were effected by Defendants' domination of the judgment debtors. Under New York law, that is sufficient to pierce the corporate veil. *See Godwin Realty Associates v. CATV*

*Enterprises, Inc.*, 275 A.D.2d 269, 270 (1st Dep't 2000) ("The stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil.").  Furthermore, Plaintiff's factual allegations are sufficiently particularized, *see United Feature Syndicate*, 216 F. Supp. 2d at 224 (requiring "specific facts" under Rule 9(b) to support a veil-piercing claim), and by describing a scheme to collect subtenant rents while deferring and ultimately breaching the purchase and sale agreement with Plaintiff, the complaint generates a sufficiently "strong inference" of fraudulent intent, as required by Rule 9(b), *Wexner*, 902 F.2d at 172.

Defendants' arguments to the contrary are not persuasive.  First, Defendants argue that a mere breach of contract cannot qualify as the kind of a fraud or wrong that is necessary to pierce the corporate veil.  Def. Br. at 15–16.  That may be true, but as described above, the alleged manipulation of the judgment debtors makes this case far from an "ordinary" breach of contract action.  In the case Defendants cite, the court granted summary judgment to a defendant on the plaintiff's veil-piercing claim after concluding that there was insufficient evidence of his "dominion and control" over the breaching party to raise a triable issue of fact. *Bonacasa Realty Co., LLC v. Salvatore*, 109 A.D.3d 946, 947 (2d Dep't 2013).  Here, as Defendants themselves essentially concede by not contesting Plaintiff's domination allegations, the complaint alleges Defendants' complete control over the A&M Entities and GFI Acquisition.

Defendants also argue that there is nothing "unique or in any way nefarious" about using single-purpose entities to lease or acquire real estate properties.  Def. Br. at 16.  They are certainly correct—just as there is nothing untoward about incorporating an entity for the specific purpose of limiting one's liability.  But for a corporation's owners to receive the benefits of limited liability, the corporation must have a separate identity, observe formalities, and the like.

15

*See Walkovszky v. Carlton*, 18 N.Y.2d 414, 417 (1966) ("The law permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability but, manifestly, the privilege is not without its limits.") (citation omitted).  Plaintiff's allegations are sufficient, at this stage, to suggest abuse that would justify veil-piercing.

Finally, Defendants appear to suggest that the relevant fraud or wrong must be connected to the *formation* of the corporation, such that the corporation operated as a "sham" from its inception.  Def. Br. at 16; Def. Reply at 7–8.  This is incorrect.  Defendants rely primarily on a statement by the New York Court of Appeals that "[a]n inference of abuse does not arise . . . where a corporation was formed for legal purposes or is engaged in legitimate business," *TNS Holdings*, 92 N.Y.2d at 339–40, and argue from that statement alone that cases piercing the corporate veil on the basis of a corporation's owners "stripping" it of assets to render it judgment proof are "simply incorrect."  Def. Reply at 7–8 & n.4.  But Defendants deliberately omit unhelpful language from the relevant opinion, which—in its entirety—simply states that an "inference of abuse does not arise *from this record*."  *TNS Holdings*, 92 N.Y.2d at 339–40 (emphasis added).  Again, in that case, there was no showing that the corporation's owners used the corporation to commit any wrongdoing against the plaintiff.  *Id.* at 340.  Here, by contrast, Plaintiff's allegations suggest the opposite.  "[W]hether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities," *Morris*, 82 N.Y.2d at 141, and Defendants cannot successfully undermine Plaintiff's substantial allegations by misleadingly quoting a factually inapposite case.

IV.   **Conclusion**

For the reasons set forth above, Defendants' motion to dismiss Count I of Plaintiff's amended complaint is DENIED.  This resolves Docket No. 24.

Pursuant to the Case Management Plan and Scheduling Order in this matter, Dkt. No. 47, a case management conference with the Court is scheduled for September 19, 2014, at 11:00 AM.  By September 12, 2014, the parties must meet and confer and submit a joint letter to the Court.  The joint letter shall:

1. Include a statement confirming that all fact discovery has been completed (the parties should not assume that the Court will grant any extensions);

2. Include a statement regarding the status of any settlement discussions and whether the parties would like a referral to the Magistrate Judge or the Court-annexed mediation program for settlement discussions;

3. Include a statement regarding whether any party intends to move for summary judgment on or before the deadline specified in the Case Management Plan and Scheduling Order; and

4. If no party intends to move for summary judgment, propose (a) a deadline for the submission of a joint final pre-trial order pursuant to Rule 5.A of the undersigned's Individual Practices in Civil Cases, and (b) potential trial dates.

SO ORDERED.

Dated: August 15, 2014
       New York, New York

_____
ALISON J. NATHAN
United States District Judge