UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

AMERICAN FEDERATED TITLE
CORPORATION,

                        Plaintiff,                        13-CV-6437 (KMW)

        -against-                               **OPINION & ORDER**

GFI MANAGEMENT SERVICES, INC.,
ALLEN I. GROSS, and EDITH GROSS,

                        Defendants.
-------------------------------------------------------------X

Kimba M. WOOD, United States District Judge:

      In 2009, as part of an adversary proceeding in bankruptcy court, Plaintiff American

Federated Title Corporation ("AFTC") sued four limited liability companies for breach of

contract and unpaid rent. A year later, AFTC settled those claims for a total of $7.5 million. The

limited liability companies then failed to satisfy any portion of the judgment. In 2013, AFTC

commenced a special proceeding under Federal Rule of Civil Procedure 69(a) and New York

CPLR § 5225(b) to collect its full $7.5 million judgment from Defendants Allen and Edith Gross

(the owners of the four limited liability companies) and GFI Management Services, Inc.

("GFIM," an affiliated corporation).

      Following a three-day bench trial held during July 2015, this Court declined to pierce the

corporate veil of the four limited liability companies, but ordered Defendants to pay AFTC

$485,000 in funds fraudulently conveyed by the limited liability companies. *American Federated*

*Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F. Supp. 3d 388, 392 (S.D.N.Y. 2015) (Wood, J.). The

Court held that Defendants had not received any actually fraudulent conveyances in violation of

New York Debtor and Creditor Law ("DCL") § 276, but that some—though not all—of the

conveyances received by Defendants were constructively fraudulent under DCL § 273 and § 273-a. *See id.* at 406.

Plaintiff AFTC now moves for reconsideration of that decision on the grounds that (1) the Court overlooked evidence presented at trial that Defendants created an undercapitalized dummy entity specifically to avoid liability to AFTC, and therefore that the Court erred in declining to pierce the corporate veil; and (2) the Court failed to consider lack of good faith in holding that certain management fee payments made to GFIM were not constructively fraudulent under DCL § 273 and § 273-a.

For the reasons that follow, the Court DENIES Plaintiff's motion.

## I.    BACKGROUND

What follows is an abbreviated summary of the background of this case. Fuller background is set forth in the Court's previous decision. *See American Federated Title Corp.*, 126 F. Supp. 3d at 392-99.

AFTC is a Florida corporation owned solely by Robert Cornfeld that, at all times relevant to this lawsuit, held legal title to four apartment complexes in Florida. *Id.* at 392. Between 2000 and 2005, AFTC entered into a series of agreements with Allen and Edith Gross to lease the four properties. *Id.* at 392-94. Rather than sign these agreements in their own names, the Grosses created three separate limited liability companies to act as lessees of the properties (collectively, the "A&M Companies"). *Id.* After signing the leases with AFTC, the A&M Companies hired Defendant GFIM, a company also owned by Allen and Edith Gross, to provide management services for the four properties. *Id.* at 393-94.

Between 2000 and 2006, the A&M Companies encountered unexpectedly high operating costs, and in late 2006, Allen Gross informed Cornfeld that the A&M Companies no longer

generated enough income to cover their lease obligations. *Id.* at 394-95. Soon thereafter, Mr. Gross proposed purchasing the four properties from AFTC, and he and Mr. Cornfeld agreed to negotiate a Purchase and Sale Agreement (the "PSA") for the leased properties. *Id.* at 395. The PSA was finalized and signed on July 3, 2007, and provided that AFTC would sell the four leased properties to GFI Acquisition ("GFIA"), a limited-liability company owned by Allen Gross. *Id.* at 396. Although the A&M Companies and GFIA took steps in the following months to fulfill their obligations under the agreement, the PSA failed to close on the scheduled closing date in February 2008. *Id.* at 397. At trial the parties offered differing explanations for this failure.[1] *Id.*

In March of 2008, GFIA and the A&M Companies sued AFTC in Florida court, alleging that AFTC had fraudulently induced, and then breached, the PSA (the "PSA Action"). *Id.* Around the same time, AFTC brought eviction lawsuits in Florida court against the A&M Companies, alleging that they had defaulted on their lease obligations. *Id.* In response, two of the A&M Companies filed Chapter 11 petitions for bankruptcy in the Southern District of New York, seeking to preserve the status quo pending final resolution of the PSA Action. *Id.* at 397-98. The parties then agreed to transfer the PSA Action to the bankruptcy court as an adversary proceeding. *Id.* at 398. AFTC filed counterclaims against GFIA, for breach of the PSA, and against the A&M Companies, for non-payment of their lease obligations. *Id.* Throughout the pendency of the PSA Action and the related bankruptcy actions, GFIM continued to provide property management services for the properties still controlled by the A&M Companies. *Id.*

---

[1] At trial, Allen Gross testified that before the closing date, Cornfeld made clear "that he had changed his mind about the sale and did not want to go through with it because he would have substantial tax liability as a result." (Gross Decl. ¶ 41 [Doc. No. 203]). Cornfeld, by contrast, testified that AFTC was "ready, willing, and able to close," but could not because GFIA did not provide the requisite documents. (Trial Tr. 359:1-4).

In October of 2010, the bankruptcy court approved a comprehensive settlement among the parties. *Id.* at 399. As part of the agreement, AFTC's counterclaims were granted, with corresponding judgments of $7 million against the A&M Companies and $500,000 against GFIA. *Id.* However, these amounts were never paid. *Id.*

In 2013, AFTC commenced this special proceeding under CPLR § 5225(b) to recover all or part of the judgment from Defendants Allen and Edith Gross and GFIM. *Id.* at 392. Following a three-day bench trial held during the week of July 6, 2015, the Court issued its decision declining to pierce the corporate veils of the A&M Companies and GFIA, and holding that some—but not all—of the payments made to Defendants during the pendency of the PSA Action were constructively fraudulent conveyances. *Id.*

AFTC now seeks reconsideration of that decision. *See* (Mot. for Reconsideration, 1 [Doc. No. 243]).

## II.   LEGAL STANDARD

A motion for reconsideration should be granted only where "the moving party can point to controlling decisions or data that the court overlooked," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), or where necessary to "correct a clear error or prevent manifest injustice," *Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002) (Scheindlin, J.) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (Sweet, J.)). This standard "must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, No. 00-CV-9214, 2003 WL 21263544, at *2 (S.D.N.Y. June 2, 2003) (Sweet, J.). Moreover, "[a] motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced."

*Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012)

(Scheindlin, J.) (quoting *Associated Press v. U.S. Dep't of Defense*, 395 F. Supp. 2d 17, 19

(S.D.N.Y. 2005) (Rakoff, J.)) (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Veil Piercing

AFTC argues first that the Court erred in declining to pierce the corporate veil of GFIA

based on GFIA's conduct in filing the PSA Action.

The equitable doctrine of veil piercing permits courts to "disregard the corporate form"

and hold a third party liable for a corporate entity's debts in certain circumstances. *Walkovszky v.

Carlton*, 18 N.Y.2d 414, 417 (1966). To determine whether to pierce the corporate veil, New

York courts apply a two-prong standard that requires proof of both external control and

wrongdoing. A plaintiff must show that a third party "exercised complete domination of the

corporation in respect to the transaction attacked," and that the third party used its control over

the corporation "to commit a fraud or wrong against the plaintiff." *Morris v. N.Y. State Dep't of

Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993). Courts have repeatedly emphasized that this is a

demanding standard. *See, e.g.*, *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 260-61 (S.D.N.Y. 2014)

(Cedarbaum, J.) (quoting *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998))

("Those seeking to pierce the corporate veil 'bear a heavy burden' of showing that veil piercing

is warranted.").

This Court previously considered and rejected AFTC's argument that the corporate veils

of the A&M Companies and GFIA should be pierced based on an alleged scheme by Defendants

to "intentionally and methodically strip[] [those companies] of their assets" so as to avoid

payment of lease obligations to AFTC. *American Federated Title Corp.*, 126 F. Supp. 3d at 409-

13. AFTC now argues that veil piercing is warranted on the alternate theory that GFIA, the

single-purpose entity owned by the Grosses that was signatory to the PSA, was an

undercapitalized "dummy" entity created to serve Allen Gross's personal interests while

avoiding liability to Mr. Gross's creditors, including AFTC. (Mot. for Reconsideration at 2).

It is true that GFIA had no assets. Although courts frequently pierce the veil when a third

party has used an undercapitalized dummy entity to incur obligations while evading liability, the

fact that a corporation is undercapitalized is not, on its own, enough to justify piercing the

corporate veil. *See Oriental Commercial & Shipping Co., Ltd v. Rosseel, N.V.*, 702 F. Supp.

1005, 1020 (S.D.N.Y. 1988) (Leisure, J.) ("[T]he mere fact that an entity may or may not have

the capital to respond to a potential large award against it does not justify piercing the corporate

veil."); *see also Walkovszky*, 18 N.Y.2d at 416. Thus, the mere formation of GFIA as an asset-

less entity does not provide sufficient justification for the Court to pierce the corporate veil.

Instead, AFTC must also show that the Grosses took advantage of the corporate form to

engage in some "wrongful or unjust act" toward the Plaintiff. *Morris*, 82 N.Y.2d at 141-42.

AFTC argues that the filing of the PSA Action constituted such an unjust act, because GFIA had

no assets with which to fulfill any future award, should a court decide in AFTC's favor. *See*

(Mot. for Reconsideration, 3-4). However, the evidence proffered at trial simply does not support

this claim. As this Court previously found, GFIA had legitimate reasons for pursuing the PSA

Action, which "sought to promote the corporate interests of the A&M Companies and GFIA by

enforcing a transaction to which they had previously agreed. Through the PSA Action, the A&M

Companies and GFIA fought to compel AFTC to close on the PSA, which would have

eliminated the A&M Companies' arrearages and granted GFIA title to the leased properties."

*American Federated Title Corp.*, 126 F. Supp. 3d at 412. Although the suit was ultimately

unsuccessful, GFIA's decision to pursue the PSA Action does not, itself, constitute an unjust or wrongful act toward AFTC. And AFTC has failed to explain or substantiate how GFIA's pursuit of the PSA Action was in furtherance of some broader scheme to defraud the Grosses' creditors in general or AFTC in particular.

Accordingly, the Court declines to revisit its earlier decision and pierce the corporate veils of the A&M Companies or GFIA.

### B. Fraudulent Conveyances

AFTC next argues that the Court erred in failing to consider "good faith" in determining whether certain transfers constituted constructively fraudulent conveyances under DCL 273 and 273-a. AFTC argues that management fee payments made to GFIM during the pendency of the PSA Action and bankruptcy proceedings were made in bad faith, and therefore should be recoverable by AFTC.

Under New York Debtor and Creditor Law § 273 and § 273-a, a conveyance is deemed constructively fraudulent, regardless of the intent of the debtor in making the transfer, if it lacks "fair consideration" and the debtor either (1) "is or will be rendered insolvent thereby," DCL § 273, or (2) "is a defendant in an action for money damages" and ultimately "fails to satisfy the [resulting final] judgment," DCL § 273-a. *See Matter of Bernasconi v. Aeon, LLC*, 963 N.Y.S.2d 437, 439 (App. Div. 2013). In general, a conveyance is made for "fair consideration" within the meaning of the DCL if there is both (1) an exchange of equivalent value, and (2) good faith. *See Chemtex, LLC v. St. Anthony Enter., Inc.*, 490 F. Supp. 2d 536, 545 (S.D.N.Y. 2007) (Sweet, J.) (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 53-54 (2d Cir. 2005)).

New York courts have identified an important exception to this general rule: the repayment of an antecedent debt *does not* constitute fair consideration when the recipient of the

7

payment is a corporate insider, i.e. an officer, director, or major shareholder of the transferor corporation. *See Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987); *Farm Stores, Inc. v. School Feeding Corp.*, 477 N.Y.S.2d 374, 378 (App. Div. 1984), *aff'd*, 64 N.Y.2d 1065 (1985). Even when such transfers involve an exchange of equivalent value, courts have held that they presumptively lack good faith and are therefore fraudulent. *See Orlando Food Corp. v. PFP Food Importers, Inc.*, No. CV 91-3552, 1992 WL 403425, at *2 (E.D.N.Y. Dec. 18, 1992) (citing *Southern Indus., Inc. v. Jeremias*, 411 N.Y.S.2d 945, 949 (App. Div. 1978)).

However, courts have declined to apply this "insider exception" to transfers made to corporate insiders in exchange for *new* value provided contemporaneously. *See HBE Leasing Corp v. Frank*, 48 F.3d 623, 634-35 (2d Cir. 1995); *Cilco Cement Corp. v. White*, 390 N.Y.S.2d 178, 178 (App. Div. 1976) (salary paid to corporate president was not a constructively fraudulent transfer because there was "no evidence that [the] salary was either excessive or unreasonable, or that the corporation did not receive full value in return"); *Bank Commc'ns v. Ocean Dev. Am., Inc.*, 904 F. Supp. 2d 356, 361 (S.D.N.Y. 2012) (Griesa, J.) (purchase of corporate asset for a fair price by a corporate insider was not a constructively fraudulent transfer). Unlike payments for antecedent debts, transfers to corporate insiders for *contemporaneous* value are not presumed to have been made in bad faith. *See Staudinger+Franke GMBH v. Casey*, No. 13-CV-6124, 2015 WL 3561409, at *11 (S.D.N.Y. June 8, 2015) (Koeltl, J.). This is because, "[u]nlike the preferential payment of pre-existing debts, the transfer of a debtor's property to secure a present advance of commensurate value does not ordinarily prejudice other creditors, because the debtor receives new value in exchange for the property conveyed." *HBE Leasing*, 48 F.3d at 635; *see also Bank Commc'ns*, 904 F. Supp. 2d at 361.

This Court's previous determination that the management fee payments were made for fair consideration was based on evidence showing that the payments were made in exchange for fair equivalent value in the form of *contemporaneous* management services at the four leased properties. *American Federated Title Corp.*, 126 F. Supp. 3d at 406-07. These services conferred a contemporaneous benefit on the A&M Companies by allowing them to continue running the apartment complexes and collecting rent from their tenants. *Id.* Under New York law, such payments are not presumed to have been made in bad faith—even when the transferee is a corporate insider—because the company receives new value in exchange for the payment. *HBE Leasing*, 48 F.3d at 635.

Beyond the Grosses' control over GFIM, AFTC has pointed to no evidence to show that the transfers were made in bad faith. "A party seeking to set aside a conveyance on the basis of lack of good faith must prove one of the following factors is lacking: '(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will, hinder, delay, or defraud others.'" *Staudinger+Franke*, 2015 WL 3561409, at *10 (quoting *Southern Indus.*, 411 N.Y.S.2d at 949). AFTC contends that, because GFIM enjoyed "broad authority" over the financial affairs of the A&M Companies, it "must have known" that making management fee payments would hinder or delay AFTC's ability to obtain the monies owed to it. (Mot. for Reconsideration, 9). But AFTC has failed to point to evidence in support of this contention. Instead, the trial record shows that the management fee payments were disclosed to AFTC and served as fair compensation for the management services GFIM provided. *See American Federated Title Corp.*, 126 F. Supp. 3d at 407.

AFTC has thus failed to show that the Court's earlier conclusion that the management fee payments to GFIM were made for fair consideration—and without bad faith—was clear error or contrary to controlling law.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED. The Clerk of Court is directed to close this case. All pending motions are moot.

SO ORDERED.

Dated: New York, New York
       August 11, 2016

_____
                /s/
              Kimba M. Wood
         United States District Judge